## Poteete v. Moore.

March 3, 1939.

P. L. SENTERS, Judge

R. L. POPE and O. W. BLACK for appellant.
STEPHENS & STEELY for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant was injured on October 13, 1936, while walking, and appellee was driving his car, on Highway

No. 25, in Whitley County. In her petition she alleges that at the time she was using due care for her safety, appellee operated his car in a negligent manner, at a dangerous rate of speed, more than thirty miles per hour, on a much used highway, and without giving warning of his approach, ran against and injured her. She described her injuries and resulting suffering, and sought damages in the sum of $5,000.

Appellee answering denied the allegations of the petition, and plead contributory negligence. In a third paragraph he asserted that on November 21, 1936, appellant, in writing, had released him from all liability on her claim for damages. The release, in the usual form of such documents, was made part of the answer. The consideration for the release was "$1,000.00 to me paid in hand by W. L. Moore, payer," and he prayed that it be held a bar to any action seeking recovery on account of the alleged injury.

The answer was not verified, and appellant moved to require appellee to personally verify. The court overruling her motion, she moved to strike because of lack of verification, and filed her affidavit stating that it contained untrue statements. The court overruled the motion and she replied.

In replication she controverted the second and third paragraphs of answer; but admitting the execution of a paper similar to the release, she affirmatively asserted that her signature and the delivery were procured by fraud and misrepresentation on the part of one W. H. Tipton. She alleged, in substance, that Tipton had entered into a conspiracy with the company carrying appellee's insurance, and by fraud and false statements induced her to sign the release, telling her she would receive $1,000 by settling the claim, and if she did not settle, her lawyers, whom she had employed to represent her, would sell out her interest and she would get nothing. She alleged that at the time she was in the hospital in a weakened condition, physically and mentally, hence not at all competent to realize the effect of her acts and conduct.

She then alleges that appellee was "not present at the time of, nor had any connection with the transaction," but on the contrary he had directed the insurance company to adjust or settle the claim with her attorneys, if he could, and the company had so agreed, but when

appellee came to Corbin on November 21, 1936, instead of seeing her attorneys, "he wrongfully entered into a conspiracy with Tipton and procured him to go to the hospital;" that he (Tipton), then representing the insurance company, made the statements set out in a former part of her answer, and "so importuned her under the belief and expectation she would receive $1,000.00," that she signed a release. But that instead of paying her the $1000 as promised, she was taken from her bed by Tipton to a bank where Tipton paid her $325 and no more.

She further alleges that as soon as she found out that appellee had not been a party to "said fraudulent transaction, and knew nothing about it before she filed suit," she tendered to Tipton, and to appellee and to the agent of the insurer, the amount she had received— $325, but the tender was in each instance refused. She stated that she was still ready, able and willing to repay the sum above mentioned. On her affirmative plea of fraud, she asked that defendant be estopped to rely upon the release as a bar.

Demurrer to the third paragraph of reply was overruled. Appellee by rejoinder, in a measure expressing lack of knowledge sufficient to form a belief as to many of the allegations of the answer relating to alleged activities of Tipton or the insurance carrier, or its agents, denied the same. Later he was permitted to file an amended answer, asserting that the $1000 paid upon the release, and in settlement of appellant's alleged claim, was paid by his insurance carrier acting in his stead. That $500 was paid to appellant, and her agent and adjuster Tipton, and $500 was paid under her direction to Dr. Smith her physician, for medical and hospital bills incurred by appellant; that she did receive from the insurance carrier $1,000, or the benefit or equivalent of same, and that she had not tendered or offered to repay the same before proceeding with her cause. A reply denied the allegations of the amended answer and issues were joined.

At this stage of the proceedings appellant's attorneys tendered, but were not permitted to file, their petition to be made parties, alleging that they were necessary parties, setting up their written contract under which they were to represent appellant. They alleged that the appellee, and insurance company knowing of their employment, undertook to make a settlement of

appellant's claim for $1,000 paying $500 to Dr. Smith for the doctor's bill of plaintiff, and the balance to appellant and Tipton, and that they had received nothing for their services. They assert that they were entitled to and asked judgment for one-third of the sum of $1,000 against defendant.

At this point, breaking into statement of the proceedings had, we will discuss the court's refusal to allow this pleading filed, and the court's ruling on the motion to require verification of, and to strike answer because of lack of verification. These are urged as grounds for reversal, as we read appellant's brief. Without passing on the question of whether or not the court erred in either or both rulings, it is noted that neither of these grounds was set out in motion for new trial or in the bill of exceptions. In addition, on the first ground, the tendered pleading is not made a part of the record by appropriate order, nor are the objectors, attorneys, parties to this appeal. As to the effect of failing to save and show exceptions in a bill properly prepared and approved by the court, reference may be made to Melton v. Royster, 250 Ky. 168, 61 S. W. (2d) 1099; Rogers v. Hagerman, 260 Ky. 255, 84 S. W. (2d) 42.

After joining of issues, considerable proof was heard. At the conclusion of appellant's proof motion was made for a directed verdict, upon which the court "took time." However, at the conclusion of all the evidence the court sustained appellee's motion, and the jury rendered verdict for appellee, and from a judgment dismissing appellant's petition this appeal is prosecuted.

It is urged in brief that there should be reversal because the record shows that the alleged settlement was in fraud of appellant's rights, and made without the consent of appellee and "steeped in corruption and fraud." It is also urged that appellant made out a clear case of negligence on the part of appellee. Neither of these contentions cut little figure in discussing the main question, since in brief appellant asserts:

"The action of the court in peremptorily directing a verdict for defendant was based upon the alleged settlement, and failure to return or make tender of the sum of $1,000.00."

Accepting this as the view of appellant, expressed by her counsel, we shall not attempt to go into details

as to the manner in which the accident occurred. However, after a careful reading of appellant's proof we are of the opinion that the court might have given favorable consideration to the motion on the ground that appellant showed herself to have been guilty of contributory negligence as a matter of law.

The points argued by appellant will require a brief statement of facts relative to the release and failure to tender or repay. The appellant claims that she was struck on her right side by appellee's car. Her right arm was injured, but she makes no complaint of other injury. The physician in charge of the hospital to which she was taken found injury only to the right arm, which was described as a complicated fracture. She suffered later to some extent because of the setting up of infection in the arm. The physician in charge said she was in her right mind and able to understand the effect of her acts on October 14, the day after the accident. On this day she entered into written contract, as is claimed, employing Tipton to make a settlement for her. Tipton, admittedly not an attorney, said he had for several years engaged in adjusting claims and making settlements where insurance was involved.

This contract of employment filed in the record provides that in case of settlement Tipton was to receive an amount equal to one-fourth of any sum received in settlement. Appellant says that on October 14, she did not know she was living; knew nothing of the signing of the contract, and never employed Tipton. The latter says she signed the contract, and was in her right mind and knew what she was doing. That she signed the contract is fairly evidenced from a comparison of her signature with other exhibits in the record which she admitted were signed by her. It was witnessed by Miss Smith, who was employed at the hospital at that time. She and Dr. Smith say she was in her right mind on that day, and was so for the remainder of the thirty-nine days she remained his charge. But whether she had signed or not, she so acted on the day of release and settlement as to indicate that she knew Tipton was her agent, and not as claimed, acting for the insurance company.

On the day of settlement, and just before it was made, appellant signed a letter (admittedly written by Tipton) addressed to her attorneys, assuring them that their services were no longer needed, and that they were

"discharged." After the settlement, and on the same day, she wrote to them (on the same sheet of paper above referred to): "Please disregard above instructions & proceed according to our contract." The contract referred to was a written contract of November 7, 1936, employing counsel to institute suit against appellee on a contingent fee basis.

The release was signed on November 21, 1936, and witnessed by Tipton and Dr. Smith. This she admits she signed, but says she was forced to sign same against her will, or soon after a nurse had administered a hypodermic, and that thereafter Tipton took her from the room to the hospital office, called a taxicab and took her to a bank where the $500 check of the insurance company, payable to her and Tipton, was cashed, Tipton receiving $175 and appellant $325. She relates that in going to the bank the cab took a devious way, and she was advised to "duck her head" so her attorneys might not see her. All this is denied by Tipton and the taxicab driver, and what she described as an unusual procedure at the bank was emphatically denied by the cashier who cashed the check upon the endorsement of Tipton and appellant, and at her request placed $325 to her credit, and she paid Tipton $175. The other check was made by the insurance company directly to Dr. Smith, physician in charge of the hospital. Appellant claims that she knew nothing of this arrangement, though she says she knew that Dr. Smith was to be paid his bill by appellee.

Dr. Smith testified as above stated, and further that appellant told him several times that she had contracted with Tipton to adjust her claim before the day of settlement. She was administered no drugs on that day; her chart showed that no narcotic had been administered to her after October 23. He says that Tipton had told her that settlement could be made for $1000 if that was satisfactory, and she agreed. He stated, as did Tipton, that before she left the hospital she handed Dr. Smith the check for $500, which was not only in payment of her account, but on account of her two sons whom Dr. Smith had treated in his hospital. One for several weeks because of an automobile injury; the other for operation for a ruptured appendix, followed by complications. Appellant admits that Dr. Smith had treated her sons. Dr. Smith and others testify that she left the hospital in her right mind and in an orderly way, and returned

to his office several times later for treatment of the infected arm and never mentioned the settlement, or his having been paid his fees.

One of the attorneys in the case testified that he believed that he had informed appellee, prior to the settlement, that his firm had a contract with appellant to represent her. He felt sure he had informed Tipton. He had information that Gentry, the insurance adjuster, would be in Corbin to make settlement. Tipton had told him two or three days before settlement that he was representing the insurer. He told him his firm was representing appellant. Tipton denies this, and the witness (attorney) said later that Tipton told him he was not representing anybody; that if he, witness, wanted settlement, the adjuster would be there the next day. Witness saw Tipton on Saturday (day of settlement) and they were talking about the case. Witness told Tipton he would be back from Barbourville that afternoon. When he returned he learned, through appellee, that the settlement had been closed. Prior to the day of release, with the information at hand, counsel never consulted with client, nor client with counsel.

Appellee says he believed he had learned before settlement that appellant's attorneys were representing her. He did not tell attorneys of his talk with insurance adjuster or agent, in which the insurance company agreed to look after the settlement. No suit had been filed, summons served or demand made on him. He did not pay anything, nor authorize the payment of $1000, as paid, or otherwise. The insurance adjuster and the local agent said there was nothing unusual about the manner of settlement. Appellee had reported the accident on the same or day following the accident. Tipton discussed settlement with them, and assured them of his employment by appellant. The checks were made out according to Tipton's direction.

A letter in the files, from the local agent to the Louisville office of insurer, dated November 2, 1936, and referring to the claim, assured the company that "we have been waiting for Mr. Jones to go and see Mrs. Poteete, but after he did he said she wants $2,000.00, and the hospital bill; we are under the impression that he is not the friend to us we thought him to be. I went to see Dr. Smith today, and he says that Mr. Tipton is her representative, and that Mrs. Poteete will be in the hospital for some time yet. In turn I went to see Tip-

ton, and he says he thinks he will be able within the next seven or eight days to get Mrs. Poteete to settle for the hospital bill and some little something. * * *'' On the 16th Tipton wrote to the adjuster (in Louisville) saying: ''We are now in a position to arrive at an adjustment in the above captioned case, (Mrs. Sudie Poteete). This letter was signed ''Wm. Tipton—Adj. for claimant.''

It is argued the settlement was fraudulent because Tipton, who engineered the settlement, was not an attorney. We need not discuss this feature. To all intents and purposes, as we view the entire record, appellant employed Tipton as her agent to adjust a claim for her, which at the time was against appellee, but later, by agreement, developed against the insurance company under its contract. Appellee ratified it, without making inquiry or effort to ascertain whether he was legally qualified to practice law, or to engage in the matter of adjusting her claim. Her pleadings do not undertake to assert that the alleged contract (or ratification thereof) was void, because he acted as her attorney when, admittedly, he was not licensed. The proof shows that all parties dealing with Tipton were dealing with him in good faith, as the agent of appellant.

Appellant, twice in her pleading and in proof, absolves appellee of any fraud or intention to defraud. She makes it plain that she did not offer to return so much of the money which she had at time of alleged tender, until she ''found out that said Moore had not been a party to said fraudulent transaction,'' though she had theretofore hinted that he was in conspiracy to defraud.

Assuming that appellant is correct in saying (in part) that the court directed the verdict, because he found no tender had been made, we will look to that phase of the case. The proof shows that appellant tendered the $325 to appellee and to Tipton, and the representatives of the insurance company, and that tender and offer had been refused. We have heretofore pointed out the manner of release, and what we conceived to have been its ratification. We have also referred to the matter of the distribution of the proceeds resulting from the settlement, and have concluded, from all the proof, that appellant received directly and indirectly the sum of $1,000, and which sum was paid out, or perhaps, distributed for her with her knowledge and consent.

It follows that the rule of previous tender should be applied here. That rule is so well established that a reference to a few of this court's rulings thereon will be sufficient to demonstrate that the court in dismissing the petition on the ground stated followed the correct rule.

This rule is well stated in Kentucky Central Life & Accident Insurance Company v. Burrs, 256 Ky. 64, 75 S. W. (2d) 744, 745:

> "There is a general rule prevailing in this and practically all other jurisdictions that one seeking to avoid or set aside a compromise settlement and to be remitted to his original rights must return or offer to return whatever he has received under the compromise settlement, and the party seeking such a rescission should allege the return or tender of return to or contemporaneous with the institution of the action."

This case is quoted with approval in Callahan v. Fluhr, 267 Ky. 637, 103 S. W. (2d) 109, 110, which in turn cites cases from this jurisdiction. The last quoted case gives the reason for the rule: "The restoration or offer of restoration is made in order to accomplish the avoidance of the release and is a condition precedent to doing so."

We have in several cases somewhat broadened the rule stated above, holding that where plaintiff seeks to recover unliquidated damages, as in tort, the requirements and purposes of the tender are met when a party in pleading asserts an intention, or exerts his effort to vacate and nullify a release or compromise settlement. This appears when his adversary brings to his attention such release or settlement by way of answer. Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S. W. (2d) 423, and cases cited.

But we are not so much concerned with the question as to whether there was or not timely tender. The point is as to whether or not there was tender of the sum received by appellant in settlement. As to this there is little ground for disagreement. As to the $500, the amount received by appellant, and in part paid to Tipton, there is none.

Judgment affirmed.