**FIRST NATIONAL BANK OF MAYFIELD, Executor Under the Will of Ed Gardner, et al., Appellants,**

v.

**Winnie GARDNER and David R. Reed, Executors of the Will of Bunk Gardner, Sr., Appellees.**

Court of Appeals of Kentucky.

June 23, 1961.

Rehearing Denied Sept. 22, 1961.

James W. Stites, S. Russell Smith, Edwin H. Perry, Louisville, Thomas S. Waller, Paducah, Milton C. Anderson, Wickliffe, Malcolm R. Boaz, Farland Robbins, Mayfield, for appellants.

Charles I. Dawson, Edwin F. Schaeffer, Jr., Louisville, David R. Reed, Paducah, L. M. Tipton Reed, Mayfield, for appellees.

WILLIAMS, Judge.

Ed Gardner died on June 4, 1958, at the age of 87, leaving an estate in excess of $2,000,000. His nearest surviving relatives at the time of his death were his brother, Bunk Gardner, Sr., and his nephew, Bunk Gardner, Jr. In his lockbox were found a will, a codicil and an insurance policy. The will made no provision for Bunk Gardner, Sr., or Bunk Gardner, Jr. The $100,000 life insurance policy designated James Alexander Gardner and Bunk Gardner, Jr., as remainder beneficiaries. James Alexander Gardner died unmarried before the death of Ed Gardner. A 1944 endorsement on the insurance policy amended the original beneficiary clause to some extent. A controversy concerning the effect of that 1944 endorsement was resolved by an agreement between The First National Bank of Mayfield, executor and trustee of the estate of Ed Gardner, on the one hand and Bunk Gardner, Jr., and Bunk Gardner, Sr., on the other. Pay-

ment in the amount of $50,000 by check dated January 3, 1959, in favor of Bunk Gardner, Jr., was made. Upon receipt of that amount the following release was signed by Bunk Gardner, Jr., and Bunk Gardner, Sr.:

"We, the undersigned, hereby acknowledge receipt of trust check No. 721, dated January 3, 1959, issued in favor of Bunk Gardner, Jr., in the amount of $50,000, representing full, final and complete settlement of our claims against the First National Bank, Mayfield, Kentucky, Executor and Trustee of the Estate of Ed Gardner, Deceased; any inheritance taxes shall be paid by said Executor.

"It is understood and agreed by and between the parties hereto that the above mentioned sum of money is accepted by the said Bunk Gardner, Jr., and Bunk Gardner, Sr., in full settlement of a disputed claim or claims; and it is further understood that said sum is paid and accepted as a full, final and complete settlement of all claims, causes of action, or demands of any and every kind, which said Bunk Gardner, Jr., and/or Bunk Gardner, Sr., have or might have against the Estate of Ed Gardner, Deceased, by reason of being related to the said Ed Gardner, or by reason of said Bunk Gardner, Jr., having been mentioned as a beneficiary in a policy issued by the Equitable Life Insurance Society of the United States, No. 4,-436,705, in the amount of $100,000.00.

"We hereby accept the said amount according to the herein stated terms and conditions and release the First National Bank, Mayfield, Kentucky, Executor and Trustee of the Estate of Ed Gardner, Deceased, from this and all other claims whatsoever, accept and agree to the terms and provisions of the will of Ed Gardner, and agree to the payment made by the Equitable Life Insurance Society of the United States to the First National Bank, Mayfield, Kentucky, as Trustee, and hereby hold the First National Bank, Mayfield, Kentucky, harmless of any further cost or expense by reason of this payment.

(s) Bunk Gardner (s) Bunk Gardner

Bunk Gardner, Jr. Bunk Gardner, Sr.

Subscribed and acknowledged before me on this the 6 day of Jan., 1959.

_____

Notary Public"

Following the execution of the above release Bunk Gardner, Sr., learned that another codicil had been found (later proven spurious); that Ed Gardner had back-dated the will which was probated; that he had "revised" that will by removing seven of the nine pages thereof and substituting seven new ones; and that he had executed prior wills.

The record shows that the Bank knew of the above facts during the time negotiations were being carried on, except that it did not learn of the spurious codicil until negotiations were virtually completed two or three days before the execution of the release. The record also shows that Bunk Gardner, Sr., actively participated in the negotiations and that following the discovery of the above facts the Bank, on three different occasions, offered to rescind the release upon return of the consideration paid. The offer was refused.

On March 24, 1959, Bunk Gardner, Sr., filed suit in the Graves Circuit Court to contest the probated will of his brother, Ed Gardner. The judgment of that court held both the will and the release void. Hence this appeal. Bunk Gardner, Sr., has since died and motion for order of revivor and order of substitution has been sustained.

The initial question before this Court pertains to the release signed by Bunk Gardner, Sr. If it is valid, he was estop-

ped from prosecuting his appeal from the order of the county court probating the will and this case is at an end.

The appellants contend that the release was executed and the $50,000 paid in order to settle a bona fide controversy; that the settlement was orally agreed upon by all interested parties several days prior to the actual signing thereof and prior to the discovery of the spurious codicil; that the Bank at all times resolutely refused to enter into any settlement unless Bunk Gardner, Sr., released any claim he might have against the estate of Ed Gardner, and that this statement was made numerous times to him. Appellants further state that the individuals negotiating for the Bank were untrained in the legal profession and could not have been expected to advise Bunk Gardner, Sr., who was an eminent lawyer and jurist, of every ground he might have to contest his brother's will; that if there is any doubt about the good faith of the Bank that doubt should be removed by the three offers it made to Bunk Gardner, Sr., to cancel and void the release, if he would restore the parties to the position they occupied before the release was signed. They also argue that Bunk Gardner, Sr., has ratified the release and has estopped himself from avoiding it by failing to make any effort whatever to return the $50,000 or to get his son to return that money to the Bank.

On the other hand appellees insist the release is void as to Bunk Gardner, Sr., because of the fraudulent concealment and failure on the part of the Bank to disclose information and facts in its possession, and of which its officers knew Bunk Gardner, Sr., was wholly ignorant and which were of vital materiality to him in determining whether he would or would not execute and deliver the release, and further that no part of the $50,000 was really paid as consideration for Bunk Gardner, Sr.'s signing that release. They further argue that the Bank knew that Bunk Gardner, Sr., was not asserting any claim against his brother's estate or any interest therein at the time they procured the release from him; hence at the time the $50,000 was paid to Bunk Gardner, Jr., there was no present existing claim of any character for Bunk Gardner, Sr., to settle.

As has heretofore been pointed out, three offers to rescind the compromise settlement were made: The first, on January 13, 1959, was an oral offer made by one of the Bank Directors; the second, on February 10, 1959, was made by registered mail; and the third was made on April 2, 1959, after the institution of this action in the circuit court. Each offer was predicated upon the return of the $50,000, and each was refused. It is stated in 15 C.J.S. Compromise and Settlement § 41, as follows:

"Generally, a party cannot avoid or obtain relief from a settlement obtained by fraud, mistake, or duress, unless he returns or offers to return the consideration received. The return or tender should be unconditional, and, ordinarily should be made before, or contemporaneously with, the institution of the suit, or, at least, during the progress of the trial. Relief will, as a general rule, be denied where the parties cannot be placed in statu quo."

That rule has been followed in Kentucky for many years and may be found in the following cases and the many others cited therein. Kentucky Central Life & Accident Ins. Co. v. Burrs, 256 Ky. 64, 75 S.W. 2d 744; Brotherhood of Railroad Trainmen v. Martin, 256 Ky. 436, 76 S.W.2d 269; Hubbard's Adm'x v. Louisville & N. R. Co., 267 Ky. 435, 102 S.W.2d 343; Baker's Adm'x v. Louisville & N. R. Co., 287 Ky. 13, 152 S.W.2d 276. In stating the rule this Court in virtually every case has said that it is necessary to return or offer to return the consideration received before relief may be obtained. In at least one of the cases cited above, Hubbard's Adm'x v. Louisville & N. R. Co., it was stated that [267 Ky. 435, 102 S.W.2d 345]:

" * * * the railroad company was entitled to be placed in statu quo by

the repayment of the consideration with which it had parted in the vain hope of buying its peace * * *."

■ Appellees insist that Bunk Gardner, Sr., received nothing as a result of the compromise settlement and, as a consequence, was obligated to restore nothing to the Bank. They point out that the check in the amount of $50,000 was made payable to Bunk Gardner, Jr., was deposited by him, and no part of it was ever received by Bunk Gardner, Sr. Consequently, they say, he could rescind the contract made with the Bank without tendering or offering to tender any part of the consideration paid out by the Bank. An examination of the release signed by Bunk Gardner, Sr., and Bunk Gardner, Jr., reveals that both agreed the check should be issued in favor of Bunk Gardner, Jr.; both accepted the above-mentioned sum in full settlement of a disputed claim; both accepted payment of such sum as a full, final, and complete settlement of all claims, causes of action or demands which either or both might have against the estate of Ed Gardner; and both accepted payment according to the terms of the contract and released the Bank as executor and trustee of the estate of Ed Gardner from all claims whatsoever. In view of the plain language of the contract, we are unable to see how Bunk Gardner, Sr., has failed to receive consideration. Bunk Gardner, Sr., and Bunk Gardner, Jr., jointly agreed that, in consideration of payment of $50,000, all claims which either or both might have against the estate of Ed Gardner were settled. Upon the execution of the contract they assumed a joint obligation, and having assumed such obligation, one cannot abide by the contract and retain the consideration paid while the other breaches the contract and destroys the very essence of and the primary reason for its execution in the first place. In the majority of the cases heretofore decided there has been but one person who had a right or a claim or a cause of action, and when that individual has attempted to avoid a release this Court has said that it was nec-

essary that the consideration received by him be paid back or an offer be made to pay it back before relief could be had. When payments have been made to more than one individual in the settlement of a claim, this Court has been careful to note that those payments which were made for the purpose of securing a release from that claim must be paid back or an offer made before that release can be avoided. For example, if a portion of the money paid was admittedly due, irrespective of the outcome of the disputed claim, this Court has said that that portion need not be paid back, but that the remainder which was paid to secure the release must be returned before the release could be avoided.

Here Bunk Gardner, Sr., agreed that the money paid to secure the release of any claim he might have against the estate of Ed Gardner should be paid to Bunk Gardner, Jr. The Bank suffered a detriment in the amount of $50,000. In return therefor it bought peace with both Bunk Gardner, Sr., and Bunk Gardner, Jr., and both are obligated to keep that peace unless and until all parties are restored to the same position they occupied before the release was executed.

In Poteete v. Moore, 277 Ky. 233, 126 S.W.2d 161, 165, a compromise settlement was made between the appellant and an insurance company for $1,000. One check in the amount of $500 was made payable to the appellant and her agent; another check in the amount of $500 was made payable to appellant's doctor. This Court held that, before the appellant could have the settlement set aside, she must have paid or tendered the full $1,000. There it was said:

"* * * appellant received directly and indirectly the sum of $1,000, and which sum was paid out, or perhaps distributed for her with her knowledge and consent."

Here the $50,000 was paid out with the full knowledge and consent of Bunk Gardner, Sr., and it cannot now be said that he re-

ceived no consideration for the signing of the contract.

■ By the failure to restore or offer to restore the $50,000, Bunk Gardner, Sr., cannot avoid the effect of the release. That release precludes Bunk Gardner, Sr., or anyone acting in his stead, from maintaining this action.

The judgment is reversed, with directions that the appeal from the order of the county court probating the will be dismissed.

BIRD, C. J., and STEWART and MONTGOMERY, JJ., dissenting.